Howard **GREENWALD**

v.

**INTEGRATED ENERGY, INC.;** Bache Halsey Stuart Shields, Inc. (Prudential-Bache Securities, Inc.) Arthur Andersen & Co.; Henry L. Waszkowski, Jr.; George C. Hardin; Howard W. Phillips; Donald W. Axford; John P. Holmes; William D. Humphries; E. Eugene Mason; and James W. Mitchell.

**Civ. A. No. H–82–1968.**

United States District Court, S.D. Texas, Houston Division.

April 4, 1984.

Richard B. Dannenberg, Burton Knapp, Lowey, Dannenberg & Knapp, New York City, Martha A. Evans, Saccomanno, Clegg, Martin & Kipple, Houston, Tex., for plaintiff.

Richard H. Caldwell, Mayor, Day & Caldwell, Rufus Wallingford, Fulbright & Jaworski, Richard P. Keeton, Miller, Keeton & Bristow, Alvin Owsley, Jr., Baker & Botts, Houston, Tex., Marvin Schwartz, Stuart Meiklejohn, Robert J. Lack, Sullivan & Cromwell, New York City, D.L. Case, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendants.

### ORDER

DeANDA, District Judge.

The Plaintiff, Howard Greenwald, instituted this suit alleging fraud in the sale of common stock in Integrated Energy, Inc. ("Integrated"). The Defendants are Integrated, its officers and directors Messrs. Waszkowski, Hardin, Phillips, Axford, Holmes, Humphries, Mason, and Mitchell, the underwriter of the subject securities, Bache Halsey Stuart Shields, Inc. (now Prudential-Bache Securities, Inc.) ("Bache"), and the accounting firm of Arthur Andersen & Co. ("Andersen"). Greenwald asserts three counts: the first under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, the second under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, and the third under the common law for fraud, negligent misrepresentation, and breach of fiduciary duty.

Substantively the Complaint states that Integrated was created by an "Exchange Offer" whereby common stock was given to "Offerees" in return for certain oil and gas partnerships, ventures, and properties. The "Offerees" then resold their stock to the public on the American Stock Exchange by means of a Prospectus Supplement filed as part of the registration statement. It is alleged that by material misrepresentations

and omissions in the Prospectus Supplement, the Defendants grossly overstated the reserves, revenues and expenses of the exchanged properties which led to the subsequent decline of stock value. Further, Mr. Greenwald contends that the Defendants "artificially inflated the market price of the Integrated stock, employed devices, schemes and artifices to defraud, and engaged in acts, practices and a course of business constituting a fraud on the market in Integrated stock under circumstances where, had the true facts been disclosed, ... the sale and distribution of Integrated stock could not have been effectuated...." (Complaint ¶ 45)

*Factual Background*

A brief recapitulation of the factual background is helpful to place the issues in perspective. Integrated filed its first Registration Statement on November 19, 1980 which was declared effective on March 19, 1981. The Prospectus included therein was used to solicit holders of mineral interests to exchange their interests for Integrated stock. Once tendered, these properties were assigned "Exchange Values" to determine the corresponding number of shares. On September 11, 1981 a Prospectus Supplement became effective which contained information on the tendered interests and the closing date for Offerees to reconfirm.

Beginning on October 16, 1981, Integrated distributed the same Prospectus Supplements with stickers to extend the reconfirmation date and to announce the value of those interests already reconfirmed. A second sticker was added November 9, 1981 to announce Integrated's new contract with Kerr-McGee Corporation for oil and gas exploration.

Open trading of common stock began on November 12, 1981 at $4⅞ per share. The Plaintiff purchased 100 shares on November 19, 1981 at $3⅜ per share. Integrated filed a Second Quarter Report on a Form 10-Q dated February 22, 1982. The Report announced a net loss of $276,000 along with a drop in stock price, but an explanation was given and the report was general-

ly optimistic in tone. The Third Quarter Report, filed in mid-May, 1982, announced a net loss of $604,000 with further stock decline. In his Complaint, Greenwald asserts that this later report was the first indication he had of the gross overstatements in the Prospectus Supplement. By the time the year-end report came out on September 27, 1982, Integrated stock had dropped to less than $2.00 per share.

This case is before the Court on several motions: the Plaintiff's Motion for Class Determination, the Defendants' dismissal motions and discovery motions.

## I. *The Motion for Class Determination*

Pursuant to Rule 23, Fed.R.Civ.P., Greenwald seeks to represent a class of plaintiffs defined as:

[A]ll persons who acquired, during the period September 11, 1981 through May 15, 1982, inclusive, shares of common stock of defendant Integrated Energy, Inc. ("Integrated") offered pursuant to a Supplementary Prospectus comprising part of a registration statement filed by Integrated on or about November 19, 1980, other than (i) the named defendants and members of the immediate family of each such defendant, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors, predecessors in interest or assigns of any of the defendants; and (ii) all persons who received shares of Integrated stock in connection with an Exchange Offer made pursuant to said registration statement. (Complaint; Plaintiff's Motion for Class Determination)

As a preliminary matter, the Court looks to the numerosity requirement of Rule 23(a)(1) which is easily satisfied. Millions of Integrated shares were traded, presumably to a great many investors during the class period. Clearly joinder of all plaintiffs would be impractical. *Zeidman v. J. Ray McDermott,* 651 F.2d 1030 (5th Cir. 1981).

The core of the Defendants' objections to class certification is that the investors' reliance on the alleged misrepresentations and omissions differ, thus rendering class treatment inappropriate. This reliance issue bears upon the necessary findings under Rule 23(a)(2–4) concerning commonality, typicality, and adequacy, as well as the ultimate determination of whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rule 23(b)(3).

## A. *The 10b–5 Claim*

■ Generally, in order to state a claim under Section 10(b) the plaintiff must plead (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir.1981), *modified,* 650 F.2d 815, *rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). The courts have created an additional element to require the plaintiff to show he exercised due diligence. *Dupuy v. Dupuy,* 551 F.2d 1005 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977).

■ Reliance is always an element of a § 10(b) action, although the method of proof may vary. *Id.,* 640 F.2d at 548. Under Rule 10b–5(2) the plaintiff must affirmatively prove that he relied on a material misrepresentation or omission. However, under certain circumstances the Supreme Court has held that affirmative proof of reliance is not necessary. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Rule 10b–5(1) and (3) prohibit a "course of business" or a "device, scheme, or artifice" which operates as a fraud. Thus, where *omission* of facts is alleged affirmative proof is not required, instead a rebuttable presumption of reliance arises. The Fifth Circuit has held that in nondisclosure cases the claimant must show *general* reliance on the defendant's disclosure of material information. *Simon v. Merrill Lynch, Pierce, Fenner & Smith,* 482 F.2d 880 (5th

Cir.1973). Class treatment is particularly appropriate where the alleged nondisclosure occurred in standardized written communications.

Recently, the Ninth Circuit has extended the reasoning in *Affiliated Ute* to allow recovery without affirmative proof of reliance if *misrepresentations* created a "fraud on the market." Where misrepresentations or a prospectus inflated the price of stock traded on the open market, affirmative proof of reliance was not necessary because the investor relied on the integrity of the market and the regulatory process. *Arthur Young & Co. v. U.S. District Court*, 549 F.2d 686 (9th Cir.1977) *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977). *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

To the extent that this theory has been adopted in the Fifth Circuit, it allows an investor who did not rely on a prospectus at all to challenge the sale of securities which were "not entitled to be marketed." The Plaintiff may prove his claim by showing (1) the defendants knowingly conspired to bring securities onto the market, intending to defraud the purchaser, (2) the purchaser reasonably relied on the securities' availability on the market as an indication of their apparent genuineness, and (3) the scheme to defraud resulted in his loss. *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

Reading the Complaint, the Court finds that Greenwald states a claim under all the foregoing theories of reliance. For the purpose of class certification the Court must decide whether the pleadings present common issues of reliance which are shared by the class members.

The Plaintiff lists common issues regarding the dissemination of the Prospectus Supplement and the Defendants' illegal conduct. Proof would be the same regarding the quantity, valuation, and revenue of the mineral reserves. Additionally, it would be a common issue whether Andersen and Bache aided and abetted the alleged fraud. (Plaintiff's Memorandum in Support of Class Certification).

The Defendants maintain that investors relied on different versions of the Prospectus Supplement which varied in material content. Because of these material variations, the investors did not receive and rely upon the same information. Citing the *Simon* case, the Defendants conclude that class treatment would be inappropriate in this case. Moreover, the Defendants claim that the Prospect Supplement expressly recited all the risks to investors thereby undercutting the reasonableness of reliance.

They argue that in any event, Greenwald is unfit to represent the class. The stickers added to the Prospectus Supplement, which Greenwald did not have on his copy, served to inform the rest of the investors fully. Therefore he relied on a document materially different from that relied upon by other investors. Additionally, Integrated and Bache characterize Greenwald as an unusually sophisticated investor who was obliged but failed to use the means at his disposal to investigate the risks of his investment. Thus, Greenwald is atypical and should not represent the class.

In *Simon* class certification was denied where the plaintiff had relied upon the oral representations made by a corporate insider which was not part of the standardized documents received by other investors. The case *sub judice* is distinguishable because the Complaint alleges only that written communications were misleading. We are concerned here with a set of standardized written documents. In fact these are not entirely different documents but rather one document (104 pages) to which two sticker pages were added on October 16 and November 9, 1981. The information contained in the stickers does not appear to alter materially the import of the Prospectus Supplement (Memorandum of Law of Integrated and Bache opposing class certification, Appendix A; Deposition of Greenwald, Exhibits 29, 30).

Even if the Prospectus Supplements did vary significantly, under the "fraud on the

market" theory all the information would have fed and inflated the market for Integrated shares. Theoretically investors relying upon the market also relied indirectly upon truth of the representations underlying the stock price. *In Re LTV Securities Litigation,* 88 F.R.D. 134, 143 (N.D.Tex. 1980), *decision on the merits sub nom., LTV etc. v. UMIC Government Securities, Inc.,* 523 F.Supp. 819 (1981).

The statement of risks in the Prospectus Supplement does not absolve the Defendants of liability at this stage of the game. The Fifth Circuit has stated, "To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *Huddleston v. Herman & Mac-Lean,* 640 F.2d at 544. The Plaintiff therefore is entitled to present evidence to the jury with respect to intent, materiality, and reliance despite caveats in the Prospectus Supplement. Similarly, whether the stickers actually informed the investors of the true state of affairs is a matter for determination on the merits.

■ Proof and defenses concerning investors' reliance may depend upon whether an investor relied upon an omission, a misrepresentation, or the integrity of the market. Although this will require some differentiation in proof, the focus at trial will be on the Defendants' conduct and the Prospectus Supplement. Acknowledging that there will be some matters which do not concern the entire class, the Court nevertheless concludes that common questions of reliance predominate over individual issues in the § 10(b) cause of action. To the extent that methods of proof may vary, the class could be subdivided before trial.

The Court finds that Greenwald's economics degree and ownership of securities in other companies do not render him a sophisticated investor compared to other class members. *See e.g., In Re LTV Securities Litigation,* 88 F.R.D. at 150 (class representatives were not disqualified for ownership of securities, active trading, or M.B.A. degree). It is evident from Green-

wald's deposition that he is not a securities broker, and that he acted merely as a private investor. (Deposition of Greenwald vol. I, 86–92). The Court finds he is typical of the class in this regard. The challenge to Greenwald's sophistication actually goes to the question of due diligence. Because Greenwald did not realize the downward trend of stock values from the earliest quarterly report, Defendants assert that he failed to exercise due diligence. As a result he is vulnerable to unique defenses and he should not be permitted to represent the class.

Cases discussing due diligence have consistently preserved this question for the jury. *Gower v. Cohn,* 643 F.2d 1146, 1156 (5th Cir.1981); *Dupuy v. Dupuy,* at 1220, 1221. In *Garonzik v. Shearson Hayden Stone, Inc.,* 574 F.2d 1220 (5th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979) where the court upheld a denial of class certification, the plaintiff, an attorney, had admitted to being a sophisticated investor, unlike Greenwald, whose professed occupation is that of manufacturer of paint ingredients. However, discovery has not advanced far in this case and there are no depositions of other potential class members in the record. Consequently, the Court's determination on this score can only be provisional. At any rate, if further discovery demonstrates that Greenwald's reliance or personal background are unique, a proper representative could be substituted later.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. Mr. Greenwald has demonstrated that he possesses the financial resources to maintain the class action and that his attorney is well qualified (Affidavits of Plaintiff and his attorney). But the Defendants attack his credibility citing inconsistencies in his deposition testimony which would undermine his ability to represent the class. Having read the Plaintiff's deposition, the Court finds him credible and capable of performing his fiduciary duty to represent the proposed class. As previously discussed, he shares common

interests with the class and will prosecute the case vigorously. *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973).

The Court concludes that regarding reliance and other matters for proof in the § 10(b) cause of action, issues of law and fact common to the class predominate over individual issues and Greenwald is a typical, adequate representative of the class.

### B. *The Common Law and Section 11 Claims*

■ We now address the remaining causes of action. The Court finds no commonality in the state common law claims of fraud, negligence, and breach of fiduciary duty. These common law claims would vary substantially depending on the state law where each Plaintiff resides. *Simon*, at 883. Due to the geographic dispersion of proposed members, class certification of Count III of the Complaint is inappropriate. Of course, Mr. Greenwald may pursue his common law claims in his individual capacity if he so chooses.

■ Under Section 11 a purchaser of securities need only show a material misstatement or omission in a registration statement to establish a *prima facie* case.[1] Although materiality and damages must be shown, the defendant's liability is virtually absolute even for innocent misrepresentation. Reliance is generally not an element of the cause of action.[2] The definition of materiality is substantially similar in Section 11 and Rule 10b–5. *In Re LTV Securities Litigation*, at 147. The same proof of material misrepresentation and omission will serve for both causes of action.

Section 11 provides that a plaintiff may not recover if at the time he acquired his stock he knew of the untruth or omission. Defendant Andersen contends that the Second Quarterly Report available by mid-February, 1982 put investors on notice of any untrue statements. Those who purchased securities after mid-February, 1982 should be barred from recovery. This harks back to the reliance question, and again invites the Court to decide the merits of this suit prematurely. What investors knew or should have known on a particular date is a matter for proof at trial.

■ However, the "fraud on the market" theory does not apply to Section 11 because to do so would eliminate the plaintiff's already minimal burden of proof. *Shores v. Sklar*, at 471. It is possible that some class members will have a fraud on the market claim while others will not. This fact is insufficient to destroy the class but would be a proper basis for subdivision of the class.

■ As before, the Court finds that common issues among class members predominate over individual issues at this stage of the litigation, and Greenwald is an adequate and typical representative of the class on the Section 11 claim.

### C. *The Class Period*

This brings us to the issue of when the class period should begin and end. The Complaint suggests September 11, 1981 to May 15, 1981. Plaintiff concedes that the opening date was incorrect and the proper date would be November 12, 1981, the day trading began on the American Stock Exchange, not the effective date of the Prospectus Supplement.

With respect to the closing date, the Plaintiff's most recent brief urges an extension to September 27, 1982 when Integrated was forced to "tell all" in the year-end report. For their part Integrated and Bache contend that under 15 U.S.C. §§ 77d(3), 77e(b)(2) and the terms of the Prospectus Supplement itself the dealers were required to deliver the Prospectus Supplement to prospective investors only until December 10, 1981, which should be

---

**1.** The Supreme Court has held that a plaintiff in an action for securities fraud may proceed under both sections 11 and 10(b). *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 690, 74 L.Ed.2d 548 (1983).

**2.** Reliance is required under the one year provision of Section 11(a) which is inapplicable to our facts.

the closing date. Andersen on the other hand contends that it was the Second Quarterly Report which first indicated to the public that Integrated was suffering grave losses. When the word got out, the market responded; thus, following the fraud on the market theory, the class should close in February, 1982.

■■■ The question is not when distribution of the Prospectus Supplement ceased but rather how long the value of common stock was infected by the accuseds' conduct. Consequently, December 10, 1981 is an irrelevant date for this inquiry. However, Andersen's logic is sound because the fraud on the market theory now cuts against Greenwald. In his Affidavit in Support of Class Certification p. 3 the Plaintiff states:

> 9. The Integrated 10–Q report filed on May 15, 1982 ... impacted immediately on the market price of Integrated stock, which thereafter declined to approximately $1 per share, a decline which wiped out most of my investment.

Not only did Greenwald become alerted to the problem, but the market absorbed the news as well. Those who purchased after this disclosure presumably bought stock at prices adjusted by operation of the market, hence they suffered no injury. These later investors would be subject to unique individualized defenses and constitute a separate class. (The Court notes that the Third Quarter Report is dated May 17, 1982—not May 15, 1982.) Thus May 17, 1982 is the closing date for the class period. Furthermore, if the Defendants can show that the Second Quarter Report put the market on notice, the closing date for the period will be changed to February 22, 1982.

■■■ Within the class period Integrated and Bache insist that purchasers who sold their shares before May 15, 1982 should be excluded from the class because the Complaint states that upon disclosure in May, 1982 common stock declined in value. A careful reading of the Complaint ¶ 45 reveals that the claim is not for injury caused by the disclosure but by the fraudulent conduct. It is in the nature of fraud that the injury is not felt until long after the act. Throughout the trading period the price of Integrated shares declined continuously. (See Schedule of Integrated Stock Price, attached to Andersen's Response to the Motion for Class Certification.) During this period of decline, a buyer who resold may well have suffered a loss. In light of the fact that all plaintiffs will have to prove out-of-pocket damages, inclusion of those who sold before May 17, 1982 is appropriate. *In Re LTV Securities Litigation,* at 149.

In summary, the Court finds that the issues common to the class predominate over questions affecting only individual members of the class. The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class certification is in the best interests of the class members whose relatively small monetary losses would not warrant individual litigation. The Plaintiff has represented to the Court that this is the only such action pending and would not be duplicative of other suits. (Plaintiff's Memorandum in Support of Class Determination, 15). This forum is appropriate because the headquarters for Integrated are located in this district as are many of the witnesses and documents. The difficulties in managing the class action do not appear unduly burdensome at this time.

The Court provisionally grants class certification on the Sections 11 and 10(b)/Rule 10b–5 claims. There remain certain factual issues which must be developed through discovery on the merits. Once that is accomplished and if it appears necessary, the Court will subdivide the class according to different legal theories, particular misrepresentations or omissions, or damages. *Mulcahey v. Petrofunds, Inc.,* 79 F.R.D. 272, 281 (S.D.Tex.1978). In the event that any of the Rule 23 requirements are shown to be lacking the Court will deny class certification for the purposes of trial.

Plaintiff is instructed to propose the necessary orders and notices defining the class

in light of this decision within fifteen (15) days of the entry of this order.

## II. The Dismissal and Discovery Motions

■ We turn next to the Motion to Dismiss filed by the Defendant Andersen. The Defendant argues that the Complaint fails to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P. and thus fails to state a claim for which relief may be granted. The Court agrees that the Complaint is framed in vague language, but rather than grant the motion, the Court hereby instructs the Plaintiff to amend and allege specifically the acts of each Defendant, how such acts were unlawful and the nature of his claim. The Amended Complaint shall be filed no later than April 20, 1984. In light of this disposition the Court defers ruling on the motions to dismiss and to Require an Undertaking because the Amended Complaint should remedy the defects of the Original Complaint. The Court denies the request to order Plaintiff to post a $100,000.00 bond because the Court finds that the Plaintiff's suit is not frivolous.

The Motion for Disposition of Preliminary Motions Before Consideration of Class Certification filed by Defendants Waszkowski, Hardin, *et al.* is now moot. Likewise the Motion to Stay Discovery Pending Determination of the Class Action Issue filed by the Defendant, Integrated is moot. The Court defers ruling on the Plaintiff's Motion to Compel Production of Documents until after the Plaintiff has filed his amended pleading.