James A. MULCAHEY et al., Plaintiffs,

v.

PETROFUNDS, INC., et al., Defendants.

Joseph ROGERS et al., Plaintiffs,

v.

PETROFUNDS, INC., et al., Defendants.

Robert G. HODSON et al., Plaintiffs,

v.

PETROFUNDS, INC., et al., Defendants.

Dr. Almeda A. DECKER, Plaintiff,

v.

PETROFUNDS, INC., et al., Defendants.

Civ. A. Nos. 75–H–1372 and 76–H–1964 to 76–H–1966.

United States District Court,
S. D. Texas,
Houston Division.

June 12, 1978.

274

William Emerson Wright, Houston, Tex., Donald N. Ruby and Stephen D. Oestreich, Wolf, Popper, Ross, Wolf & Jones, Morton A. Smith and Paul Whitby, Hall, Dickler, Lawler, Kent & Howley, New York City, Philip N. Smith, Jr., Lawler, Kent & Eisenberg, Washington, D.C., Ronald H. Alenstein, Shea, Gould, Climenko & Casey, Seymour J. Ugelow, Rein, Mound & Cotton, New York City, for plaintiffs.

Harvey D. Myerson and Lloyd S. Clareman, Webster & Sheffield, New York City, Eugene G. Taggart, Monroe & Lemann, New Orleans, La., Louis B. Paine, Jr., Butler, Binion, Rice, Cook & Knapp, Bennett J. Roberts, Jr., Houston, Tex., Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, Arno W. Krebs, Jr., Fulbright & Jaworski, Houston, Tex., Nathaniel Bickford, Lankenau, Kovner & Bickford, New York City, Danny L. VanWinkle, Vinson & Elkins, Houston, Tex., William H. Cook, Jr., Johnson, Morelock, Gatti, Shreveport, La., J. W. Johnson, Diamond & Johnson, Houston, Tex., Otto Obermaier, Martin, Obermaier & Morvillo, New York City, Joseph H. Reynolds, Reynolds, Allen & Cook, Houston, Tex., James M. Rhodes, Coudert Broth-

ers, New York City, Robert Roberts, III, Blanchard, Walker, O'Quin & Roberts, Thomas J. Wyatt, Hargrove, Guyton, Ramey & Barlow, Shreveport, La., Rosner, Rosner & McEvoy, New York City, James I. Smith, Jr., Barrow, Bland & Rehmet, Houston, Tex., for defendants.

## ORDER

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

Before the Court for consideration are plaintiffs' motions for class certification on behalf of 1,365 investors who participated in 12 oil and gas drilling funds sponsored by defendant Petrofunds, Inc. After carefully reviewing the affidavits, depositions, pleadings and briefs filed by the parties, the Court finds: (a) the alleged class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the representative plaintiffs are typical of the claims of the class; (d) the named plaintiffs will fairly and adequately represent the interests of the class; (e) the questions of law and fact common to the class predominate over any questions affecting only individual members; and, (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Accordingly, these actions are properly maintainable as class actions. Fed.R.Civ.P. 23(a) and (b)(3).

As hereafter discussed, there has not been sufficient factual development of the similarities and dissimilarities of the various drilling programs whose membership plaintiffs seek to represent and therefore the Court, while conditionally certifying a class of all 1,365 investors, does not determine at this time whether multiple classes or subclasses may be necessary to represent distinct groups of participants within the total investor class.[1] Thus, as hereafter discussed in Part IV., *infra*, and pursuant to Rule 23(c)(4), delineation of particular sub-

classes, if necessary, for purposes of trial must and will await discovery on the merits as to all drilling programs challenged in the complaints.

### II. NATURE OF THE ACTIONS

These actions arise out of the offering and sale to public investors of units of participation in 12 oil and gas drilling funds conducted from 1969 to 1972 by Petrofunds, Inc. Each of the offerings was made to the public through written prospectuses pursuant to registration statements filed with the Securities and Exchange Commission (SEC). Each investor in these joint ventures acquired, in proportion to the amount of his investment, an individual interest in each oil and gas leasehold obtained by the particular drilling fund. By investing in a drilling fund, each investor became entitled to voluntarily participate in any proposed further development of the particular lease by making an additional investment. Each drilling fund, therefore, consisted of at least two programs. There was the original exploratory program and a later development program. The exploratory program generally consisted of the acquisition of oil and gas leasehold interests and exploratory drilling on such properties. If based on the results of the exploratory drilling further drilling appeared appropriate, development programs were established to drill additional wells. Thus, one investor in a particular drilling fund might choose to invest solely in the exploratory program while another might choose to invest in a development as well as exploratory program. While both of these investors would have undivided interests in the same oil and gas properties, they would have differing interests based on the nature and extent of investment. Thus, the original investor would have an interest only in the exploratory wells while the investor who chose to invest in the development program as well would have an additional interest in the development wells.

---

1. It is clear that this class of 1,365 members satisfies the numerosity requirement of Rule 23(a)(1). To the extent that multiple classes may present a numerosity problem should multiple classes be necessary, see Note 4, *infra*.

The complaints allege that the defendants were engaged in a conspiracy to defraud the public investors in the drilling programs by diverting funds or property which should have inured to the benefit of the investors. While the four complaints filed on behalf of the eight named plaintiffs assert various common law actions and various violations of the federal securities laws, plaintiffs' major contention, and the one focused on by the parties and by the Court in this Order, is that defendants have violated SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under Section 10(b) of the Securities Exchange Act of 1934, in that material facts allegedly were omitted from or misstated in the Petrofunds' written prospectuses and that certain oral misrepresentations were made in connection with the offering and sale of the Petrofunds' units of participation.

## III. MAINTAINABILITY AS A CLASS ACTION

A motion for class certification was filed very early in the initial 1975 action, before any formal discovery on the class issue had been conducted by plaintiffs. Once guidelines for class discovery were approved by the Court, counsel for defendants Petrofunds, Inc., McRae Consolidated Oil & Gas, Inc., McRae Oil Corporation, James A. McRae, Elsie V. McRae, David L. Kelley, J. Frank Benson, and Bromley DeMeritt, Jr. (the "McRae defendants"), took the lead in conducting discovery on the class question, particularly through depositions. There has been only limited discovery by plaintiffs on the class question,[2] plaintiffs having focused their efforts in responding to the arguments advanced by these defendants in their opposition to class certification.

The major question raised by defendants' opposition to class certification is whether or not the named plaintiffs' reliance on the defendants' alleged misrepresentations and omissions is similar to and typical of reliance by purported class members. This "reliance" issue raises questions of class maintainability under the Rule 23(a)(2) requirement of commonality, the Rule 23(a)(3) requirement of typicality, the commonality element of the Rule 23(a)(4) requirement of adequacy, and the Rule 23(b)(3) requirement that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members". However, before addressing the reliance issue, the Court briefly discusses plaintiffs' satisfaction of the Rule 23(a)(4) requirement of adequacy of representation as it pertains to issues other than reliance.

### A. Adequacy of representation

■ A class plaintiff is an adequate representative under 23(a)(4) when: "(1) the representative . . . [has a] common interest with the unnamed members of the class; and (2) . . . the representative will vigorously prosecute the interests of the class through qualified counsel." *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). The "common interest" requirement will be discussed in the reliance section, Part III.B., *infra*, so that the instant discussion is limited to the "vigorous prosecution" requirement.

■ Counsel for the McRae defendants argues that the named plaintiffs and their counsel do not satisfy this second requirement. Such contention is without merit. The depositions make clear that the named plaintiffs intend to vigorously prosecute these suits, and there is no basis for questioning plaintiffs' counsel's abilities. Defendants argue that the named plaintiffs have evidenced a lack of commitment to finance the actions, relying solely on particular questions and answers in the depositions where certain plaintiffs hesitated, for example, when asked hypothetically by defense counsel if they would be willing to pay a total of $200,000.00 in costs and fees if such was necessary. However, the deposition discussions relating to this issue, when read in their entirety and not out-of-context, demonstrate that the plaintiffs, as sophisticated businessmen in a high income

---

2. Plaintiffs have deposed two officers of Petrofunds, David Kelley and Frank Benson.

bracket, have both the wherewithal to fund the suits and the firm intention of doing so.

■ Defendants further argue that the real impetus for these actions comes not from plaintiffs, but rather from two former officers and members of the Board of Directors of Petrofunds, Messrs. Pelliconi and Schueler, and their association with plaintiffs' counsel. The Court has reviewed thoroughly the depositions of the plaintiffs, in which certain plaintiffs openly and candidly admit that they have discussed with these two ex-directors the possibility of a civil action against Petrofunds and others and have relied upon their special knowledge as insiders. However, such revelations are of little moment to the Court in its present inquiry. Independent of the interests and motivations of these two ex-directors upon which certain plaintiffs have relied in part in prosecuting their suits, it is clear from the depositions of the named plaintiffs that they are not straw men who have been recruited by Messrs. Pelliconi and Schueler to front the instant litigation. Accordingly, the Court finds that the link between these two ex-officers and certain of the named plaintiffs in no way diminishes their status as proper class representatives and, if anything, buttresses plaintiffs' assertion that they are adequate representatives capable of effectively asserting claims of securities violations on behalf of the alleged class.

### B. Commonality, Typicality and Predominance: The Reliance Issue

As noted above, defendants' major attack centers on the issue of reliance, which has particular application to the commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

### 1. Required Proof of Reliance at Trial: The Affiliated Ute Doctrine as Applied in the Fifth Circuit

The parties have engaged in the continuing legal debate of whether proof of reliance is necessary in an action alleging violations of Rule 10b–5. Where the fraud is accomplished primarily by *omitting* facts that would influence the reasonable investment decision of an investor, the United States Supreme Court has held that there is no need to prove actual reliance on the omission when the claimant has acted differently than would a reasonable investor possessed of the omitted information. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). *See generally*, Note, *Reliance and Private 10b–5 Actions*, 88 Harv.L.Rev. 584 (1975).

The Ninth Circuit has expanded this holding that reliance need not be proved in cases involving omissions to cases involving *misrepresentations* in two specific areas. Where the misrepresentations inflate the price of stock traded on the open market, a plaintiff need not prove actual reliance on the misrepresentations since an investor relies on the integrity of the market and on the price of a security to reflect the true value of the security traded. *Blackie v. Barrack*, 524 F.2d 891, 905–08 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Similarly, where the misrepresentations are contained in registration statements filed with the Securities and Exchange Commission and written prospectuses disseminated to the public, a plaintiff need not prove actual reliance on the misrepresentations since an investor in a registered security relies on the integrity of the regulatory process and the truth of the representations made to the governmental agency. *Arthur Young & Co. v. U. S. District Court*, 549 F.2d 686, 695 (9th Cir. 1977), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977).

The Fifth Circuit has not specifically adopted this expansive approach but instead has read *Affiliated Ute* more narrowly. While *Affiliated Ute* states that positive proof of reliance is not a prerequisite to recovery in an omissions case, the Fifth Circuit has interpreted the broad language in the Court's opinion to mean that proof of *specific* reliance on particular omissions is indeed not necessary, but that plaintiff still must show, even in nondisclosure cases, that

he placed some *general* reliance on the defendant's disclosure of material information. *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880 (5th Cir. 1973); *Vohs v. Dickson*, 495 F.2d 607, 622 (5th Cir. 1974).

The Fifth Circuit's construction of *Affiliated Ute* in *Simon* should not be interpreted as mandating proof as to how each individual plaintiff or class member generally, subjectively relied upon alleged omissions, a requirement which necessarily would defeat class treatment in any securities action.[3] Most importantly, as indicated in *Simon, supra* at 882–83, and discussed below in Part III.B.2., *infra*, proof of general reliance is appropriate for class treatment if the general reliance is uniform throughout the class, particularly if the alleged omissions stem from standardized written communications. Such was not the case in *Simon* where the district court found that class treatment was inappropriate due to plaintiff's primary reliance on non-standardized, unique oral statements from a corporate insider as opposed to a common course of conduct on the part of the defendant. *Id.* at 883. Thus, although *Simon* conservatively construes *Affiliated Ute* so as to keep alive a reliance requirement, the Fifth Circuit also has indicated in the same opinion that such a requirement on the merits should not control the earlier and distinct question of class certification, thus remaining consistent with the established rule that the class question should in no way constitute a preliminary hearing on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Huff v. N. D. Cass Co.*, 485 F.2d 710 (5th Cir. 1973) (en banc). The appropriate inquiry is therefore to determine to what extent proof of reliance, if required, affects the class question.

### 2. Test of Common Reliance for Purposes of Class Determination

For purposes of a class determination, the question which must be decided pursuant to Rules 23(a) and 23(b)(3) is whether there are common issues of reliance throughout the membership of the potential class. If the reliance issues are common throughout the class, then class treatment is appropriate. If individual reliance issues predominate, then a class action is inappropriate.

Whether a class is maintainable can be determined easily in certain cases. Where the omissions or misrepresentations are contained in written materials which were furnished to and relied upon by all potential class members, it is clear that there are common, uniform issues of reliance and class treatment is appropriate. *Green v. Wolf Corp.*, 406 F.2d 291 (2nd Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Korn v. Franchard Corp.*, 456 F.2d 1206 (2nd Cir. 1972); *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968); *Blackie v. Barrack, supra; Arthur Young & Co. v. U. S. District Court, supra; In re Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 351 (N.D. Okl.1977). On the other hand, where there are oral misrepresentations and the misrepresentations differ between various plaintiffs, there are varying issues of reliance and class treatment is inappropriate. *Morris v. Burchard*, 51 F.R.D. 530 (S.D.N.Y. 1971); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, supra; Mascolo v. Merrill Lynch, Pierce, Fenner & Smith*, 71 F.R.D. 491 (S.D.N.Y.1976); *Reilly v. Frederick*, 21 F.R.Serv.2d 163 (N.D.Ala.1976).

This case involves both written statements containing alleged omissions

**3.** Both *Simon* and *Vohs* affirmed judgments on the merits in favor of the defendants. In both cases, after a full trial, the plaintiffs failed to show any general reliance on the defendants' alleged omissions or misrepresentations and the Circuit discussion focused on plaintiffs' failings at trial. Unlike the Fifth Circuit decisions, the two Ninth Circuit decisions on the reliance issue, *Blackie v. Barrack, supra*, and *Arthur Young & Co. v. U. S. District Court, supra*, discuss the question in the context of class certifications involving circumstances where general reliance was uniform throughout the class. Because of the differing factual postures within which the Fifth and Ninth Circuits discussed the reliance issue, thus necessitating a varying focus by the particular circuit court, it is arguable that the approaches of the two circuits are not significantly inconsistent for purposes of class certification.

and misrepresentations which were disseminated to the public in prospectuses and certain alleged oral misrepresentations. Plaintiffs emphasize the allegations of written omissions and representations and argue in favor of class treatment, while defendants point to certain oral representations and argue that the class therefore should be denied. However, it is clear that the inquiry is not simply whether the representations were oral or written. Different written representations can be made to different purchasers, making class treatment inappropriate. Likewise, oral misrepresentations can be uniform throughout a large class so that class treatment may be appropriate. *Grainger v. State Securities Life Ins. Co.*, 547 F.2d 303 (5th Cir. 1977). In *Grainger*, the Fifth Circuit noted that:

> "the key concept in determining the propriety of class action treatment is the existence or non-existence of material variations in the alleged misrepresentations. It is possible, although unlikely, that oral misrepresentations can be uniform, e. g., through use of a standardized sales pitch by all the company's salesmen."

*Id.* at 307. Therefore, the issue before the Court is whether it appears that there were material variations in the alleged misrepresentations or omissions among the various class members or whether the representations, or the lack thereof, generally were uniform throughout the class.

In their legal memoranda, defendants rely on cases which denied class certification on the basis of non-uniform oral representations. However, it is clear from an examination of the decisions cited by defendants that the holdings stemmed solely from the particular facts as found by the court and not from a difference in the legal standard applied. Thus, as discussed above, in *Simon v. Merrill Lynch, Pierce, Fenner & Smith, supra*, the Fifth Circuit stressed the special and exclusive reliance of the named plaintiff upon oral representations made by a corporate insider which were outside the standardized communications received by other members of the purported class in affirming denial of class certification by the

district court. Other cases cited by defendants likewise turn on the facts as found by the court. *See, e. g., Mascolo v. Merrill Lynch, Pierce, Fenner & Smith, supra; Reilly v. Frederick, supra; Morris v. Burchard, supra.*

Defendants also cite the recent case of *Greenspan v. Brassler*, 78 F.R.D. 130 (S.D. N.Y.1978), in support of their contention that the oral misrepresentations dictate denial of class certification, but defendants' reliance upon *Greenspan* is misplaced. The major omission alleged in *Greenspan* was that defendants had failed to disclose the true financial condition of a real estate investment trust. Plaintiffs had made three purchases of shares in the trust, and the third purchase was made *after* defendants had disclosed the trust's true financial condition. Although the court additionally considered other grounds in denying class certification, it stressed primarily the fact that as to these plaintiffs there was no material omission as to the third purchase. Because there was no material omission, there could be no presumption of reliance pursuant to *Affiliated Ute* as to the named plaintiffs, although other potential class members who had purchased before disclosure of the financial condition of the trust would be able to rely upon a presumption of reliance. Therefore, the Court found that these plaintiffs did not possess claims which were common and typical of those of the class. This case and analysis are clearly distinguishable from the instant facts where no such obvious distinction can be drawn between the named plaintiffs and potential class members.

The deposition testimony of the named plaintiffs does not support defendants' argument that plaintiffs relied upon unique, atypical oral representations. Rather, although the record is not fully developed in this area, the depositions on file indicate that the sales of Petrofunds units of participation may have been based upon a common sales scheme and that plaintiffs therefore relied upon a standardized set of representations which originated in the written prospectuses. To use defendants' term,

these units were tax shelter investments. Implicit in a tax shelter is the prospect of substantial tax savings at the beginning of the investment. Documents which were furnished by Petrofunds to brokers and in return furnished to one of the plaintiffs emphasized the tax advantages of the Petrofunds investment. Thus, although full merit discovery will reveal the extent of a standardized sales pitch, it is fair to conclude at this time that these documents and sales techniques, in light of their nature as tax shelter investment offerings, were part of a common sales plan aimed at high income persons.

■ Further, the plaintiffs' reliance upon their brokers, accountants, tax attorneys and investment advisers, as established in the depositions, does not make reliance unique to each particular plaintiff. As emphasized by defendants, these tax shelter investments were designed to fit only specialized investors' needs and thus most, if not all, potential investors relied upon similar criteria and advice in making their investment decision. Indeed, the present record reflects that Petrofunds, Inc., disseminated to the financial community certain documents "for use by broker-dealers only" in order to guarantee an effective, standardized sales presentation. Thus, oral representations by financial advisors do not necessarily translate into unique representations to the named plaintiffs where their financial advisors are relying upon a common set of documents published by the defendants which have been filed with the Securities and Exchange Commission and disseminated to the financial community. *See Green v. Wolf Corp., supra*, at 295 n. 4; *Blackie v. Barrack, supra*.

There can be no doubt but that plaintiffs have not firmly established that a common sales method was utilized in the Petrofunds offerings so as to lay to rest defendants' emphasis on oral, as opposed to written, representations. However, an examination of plaintiffs' central allegations of material omissions in the written prospectuses, the common theme running through the prospectuses and other written publications

pertaining to the 12 funds, and a consideration of the depositions of the named plaintiffs, does not support defendants' assertion that common reliance is absent in this case.

Defendants have argued that some of the named plaintiffs actually relied upon oral presentations in deciding to purchase their Petrofunds interests to the exclusion of reliance on the written prospectuses. Not only is the testimony defendants cite taken entirely out of context such that the depositions, when read as a whole, do not support this assertion, but the defendants must have intended for potential purchasers to rely upon the prospectuses. Therefore, defendants' arguments and any proof forthcoming at trial by defendants on this issue are of questionable evidentiary significance for purposes of making a class determination. *See Arthur Young & Co. v. U. S. District Court, supra*, at 695.

■ Therefore, pending full merit discovery in which matters pertaining to reliance and the nature of the Petrofunds offering can be and should be explored in detail, the Court preliminarily determines that plaintiffs have sufficiently shown both factually and legally that the requirements of commonality, typicality and that common issues predominate are not lacking. If class-wide discovery does in fact indicate that reliance on the part of purported class members, as defined by the Fifth Circuit in *Simon*, varies substantially from that of the named plaintiffs, then this Court will not hesitate to alter its present ruling.

## IV. DEFERRAL OF FORMAL CERTIFICATION FOR PURPOSES OF TRIAL

■ Because of the limited nature of the discovery conducted to date, it is premature to determine at this time the contours of the classes and/or sub-classes that represent the interests of the participants in the 12 drilling funds which plaintiffs seek to represent. Counsel understandably have approached the class certification question, at least for purposes of briefing, with the assumption that a single class will comprise all 1,356 participants in all 12 drilling funds

or there will be no class at all. Indeed, at this stage of the proceedings, and based on plaintiffs' preliminary satisfaction of the Rule 23 criteria, as discussed in Part III., *supra,* an identifiable class exists consisting of the 1,365 persons who invested in any of the 12 drilling funds.

However, given the existence of 42 drilling programs, both exploratory and developmental, within the 12 funds, there is no reason to view the Court's present determination as a rigid one. Rule 23(c)(4)(B) provides for division of a class into sub-classes where potential class members have divergent interests, *see, e. g., Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3rd Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), and in a case such as this, subdividing the class may very well be necessary.[4] *See Arthur Young & Co. v. U. S. District Court, supra; In re Home-Stake Production Co. Securities Litigation, supra.* Thus, it is conceivable that full merit discovery may dictate 12 separate classes, one for each drilling fund with multiple sub-classes for each class, perhaps distinguishing between the exploratory and development programs. Other possible ways of distinguishing between potential classes include differences in legal theories. For example, the Hodson complaint raises the possibility of a class composed of plaintiffs who purchased their interests at the urging of defendant Biller. Additionally, a distinction between omission and misrepresentation counts may be necessary for purposes of class certification before trial.

Plaintiffs allege that the claimed omissions and misrepresentations, particularly in the prospectuses, which form the basis for the instant actions are common to each of the drilling programs and that any differences between the various programs affect only the damages recoverable by each participant, but do not affect the question of class certification for purposes of liability. There is no doubt but that the Court can authorize class treatment for purposes of liability and individual proof with respect to damages so as to sever out the complicated accounting procedures necessary to determine the economic interest that an individual investor owned in a particular lease or group of leases. *See Arthur Young & Co. v. U. S. District Court, supra,* at 696; *Blackie v. Barrack, supra,* at 905; *In re Home-Stake Production Co. Securities Litigation, supra.* However, as indicated previously, the Court is of the opinion that further, broader discovery will disclose whether the material questions of law and fact raised by the complaints are common to all drilling fund participants, as appears at this preliminary stage, and whether the interests of all fund participants are parallel. Other than the argument of counsel, the only substantial evidence in the record directly relating to the appropriate scope of representative classes is the testimony of David Kelley (Kelley Deposition, pp. 179–205) and the prospectuses covering the twelve drilling programs. The Court, therefore, hereafter discusses generally those variables that most likely will determine whether the present single class is appropriate and, if not, parameters of the classes and/or subclasses to be formally certified before trial.

## A. Nature of the Leases Involved in Each Drilling Program

The investors in the 42 different drilling programs acquired undivided interests in oil and gas leases which were located in various geographic areas. Different drilling

---

4. Whether this action would satisfy the numerosity requirement of Rule 23(a) has not been in dispute. It is clear that joinder of 1,365 investors who reside throughout the United States would be impracticable. Since the possibility of multiple classes exists, it is appropriate to consider whether the numerosity requirement would be met for a smaller class. The Petrofunds offerings were national in scope and, therefore, one would assume that members of a smaller class will reside in numerous states.

Given these circumstances and the underlying similarity of all of the drilling programs, it appears that smaller classes still would satisfy the numerosity requirement. *See Republic Nat. Bank v. Denton & Anderson Co.,* 68 F.R.D. 208 (N.D.Tex.1975) (class of 40 potential members certified); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1968) (potential class of greater than 25 members normally will satisfy numerosity requirement.)

funds acquired different leases and while plaintiffs contend that the omissions and misrepresentations were common to all the funds, it appears that some of the alleged violations may be more pertinent to certain oil and gas properties and to certain drilling funds than to others.

There are two major allegations in the complaints: the alleged lease manipulation scheme and the fraudulent activities in connection with the Louisiana pipeline. It is not clear to the Court at this time whether every lease acquired by Petrofunds was involved in the alleged manipulation or whether only a few leases were involved. If a small number of leases were involved, then it may be that only those drilling programs which held such leases should be included in the same class or sub-class. Likewise, it appears that the pipeline allegation may have application only to those oil and gas properties and wells in the immediate vicinity of the pipeline and would have no application to the properties and wells acquired by Petrofunds in other locations. The pipeline was constructed from the Sailes Field to Shreveport, Louisiana. Plaintiffs contend that there were omissions in the prospectuses with respect to this pipeline which were unique to the 1971 and 1972 drilling programs. However, the Court notes that the 1970 Annual Drilling Fund lists 6 wells in the Sailes Field. (Mulcahey Deposition, Exhibit No. 3.) Since these 6 wells were located in the area serviced by the pipeline, the alleged pipeline fraud may have affected that 1970 Annual Drilling Fund as well as the 1971 and 1972 drilling programs. Thus, before the Court is able to certify a definite and distinct class or sub-classes, there must be evidence gathered through merit discovery demonstrating which leases, wells, and drilling programs are covered by the two major allegations made by plaintiffs in their complaints.

### B. The Prospectuses and other Pertinent Written Materials Prepared by Defendants

As the merits of the case are explored, it also will be necessary for counsel to analyze the dissemination techniques utilized by the McRae defendants to attract investors. An examination of the prospectuses discloses a significant similarity in them. While plaintiffs have listed the alleged omissions and misrepresentations in the various prospectuses, (Plaintiffs' Original Class Memorandum, at 45–49), analysis by counsel with respect to how these omissions and misrepresentations apply to each prospectus, lease, well and drilling program will greatly assist the Court in delineating appropriate class contours.

### C. Proper Class Representatives

At the appropriate time, the Court also will consider which of the named plaintiffs are appropriate class or sub-class representatives, depending on the class contours drawn, and whether there should be separate representation for the different classes or sub-classes should the Court determine that more than one class is appropriate. If the Court determines that more than one class is necessary to adequately represent conflicting or multiple interests, then the rule announced in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), as adopted by the United States Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), which generally excludes those plaintiffs who were not themselves purchasers of the securities in question as to a particular class, may have application.

### V.  CONCLUSION

The Court finds that these actions properly are maintainable as class actions. However, as briefly set forth herein, certain fact questions must be further explored through discovery on the merits, following which the Court will consider whether subdividing of the class is appropriate. Thus, the Court stresses that the findings announced herein are, like those of any preliminary class ruling, purely provisional in nature. *See* Rule 23(c)(1). Should full discovery indicate to the Court that any of the Rule 23 requirements are lacking, then the

Court will, without hesitation, deny class certification for purposes of trial. However, at this time, given that defendants have launched a full-scale attack on the class allegations of plaintiffs, and further given that this Court is unable to determine at this time that any of the Rule 23 requirements are lacking in view of plaintiffs' allegations, the prospectuses and the discovery conducted to date, the Court has determined that discovery should proceed on a class-wide basis as to all twelve drilling funds and that appropriate notice should issue pursuant to Rules 23(c)(2) and (d)(2).[5]

Counsel shall submit within twenty (20) days in writing a proposed schedule for discovery on the merits in line with the concepts embodied in the *Manual for Complex Litigation*. The Court instructs counsel to confer and, to the extent feasible, to agree as to a reasonable calendar for discovery. Upon review of the submissions by counsel, the Court will determine whether a pretrial conference is necessary so that a definite time table can be established consistent with the views of counsel. It also appears that notice of this Rule 23(b)(3) action to all participants in the 12 drilling funds is appropriate pursuant to Rule 23(c)(2). Counsel therefore shall set forth their respective positions on the notice requirement within twenty (20) days.

---

**5.** The recent decision of *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978) (hereinafter "*Blue Bird*") has come to the attention of the Court. The detailed guidance provided by the Fifth Circuit for determining the propriety of class certification in a complex antitrust or securities action has been considered in depth. As outlined by the Circuit, this Court has (1) defined in Part III.B.1. the substantive legal issues which will control the outcome of the litigation, (2) determined in accordance with *Affiliated Ute* and *Simon* that at most only generalized proof of reliance is required of plaintiffs in light of the allegations and supporting discovery to date, and (3) therefore concluded that plaintiff at this time has satisfied the Rule 23(a) and (b)(3) requisites. Thus, in view of the novel application by the district court in *Blue Bird* of a bifurcation theory and the presence of undetermined and difficult legal and factual issues which made premature the district court's certification of a nationwide class, the Court is of the opinion that the instant class determination has been made easier by the existing precedent from other circuit and district courts which bear directly on the questions raised by counsel in this case. Fully cognizant that

"This judicial tool specifically provides for continuing review with later certification of additional classes, creation of sub-classes, or decertification"

id. at 330, the Court therefore has determined for the reasons expressed herein that class certification is appropriate.