Larry L. and Patricia A. LONGDEN, Allan C. and Joy T. McAllister, Bharat H. and Panna B. Barai, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Jeffrey S. SUNDERMAN, Arthur Andersen & Company, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., a Missouri professional corporation, Alfred C. Hagemann, Robert Thomson and Joseph Harter, Defendants.

Civ. A. Nos. 3–86–1737–H, 3–87–0569–H, 3–87–0572–H, 3–87–0603–H, 3–87–0608–H, 3–87–0609–H and 3–87–0612–H.

United States District Court, N.D. Texas, Dallas Division.

Nov. 8, 1988.

Terrell Oxford, Susman Godfrey & McGowan, Dallas, Tex., for plaintiffs.

R. Dennis Wright, Hillix Brewer Huffhaus Whittaker & Horner, Kansas City, Mo., for defendants Arthur Anderson & Co. and Alfred C. Hagemann.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court are Plaintiffs' Motion for Class Certification, filed February 9, 1988; Arthur Andersen & Co., and Alfred C. Hagemann's (collectively "Andersen") Response in Opposition, filed July 29, 1988; Plaintiffs' Reply, filed August 22, 1099; Andersen's Sur–Reply, filed September 6, 1988; Plaintiffs' Supplemental Brief in Response thereto, filed October 20, 1988; Andersen's Response thereto, filed October 27, 1988, together with substantial evidence submitted by both sides (including all private placement memorandums and a list thereof, filed October 6, 1980) in support of their respective positions. The Court heard oral argument on the class certification motion on October 28, 1988. For the reasons set forth below, the Court has decided to

certify a class of investors as described in the Plaintiff's Fourth Amended Complaint.

## I. BACKGROUND

This securities fraud litigation arises out of the sale of approximately $100 million worth of interests in various real estate limited partnerships owning property in Texas, Arizona, Oklahoma, Wyoming and the Cayman Islands. Between October 1986 and June 1987, 93 individual lawsuits were filed in this Court in connection with these offerings by approximately 850 plaintiffs and were subsequently consolidated for purposes of pretrial and discovery proceedings.

On February 11, 1988, a Fourth Amended Complaint ("the Class Action Complaint")[1] was filed. Six named Plaintiffs[2] ("Plaintiffs"), whose investments cover a total of seven limited partnerships are attempting to proceed as class representatives for over 4000 persons who invested in these seven partnerships and in 114 other limited partnerships offered over a five year period. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move for certification of a class of plaintiffs defined as follows:

> All persons who purchased partnership interests in the limited partnerships sponsored, syndicated or promoted by Jeffrey S. Sunderman and Sunwise Corporation and each of its subsidiaries or related entities during the period May 1, 1979 to December 31, 1984, except for (a) defendants and their immediate families; (b) named co-conspirators; (c) the Sunderman corporations, their employees and agents and (d) the immediate families of such employees and agents.

The Class Action Complaint alleges violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), Section 10(b) of the Securities Exchange Act of 1934, and the Securities and Exchange Commission's ("SEC") Rule 10b–5 promulgated thereunder, in addition to common law fraud. These causes of action are brought against Jeffrey S. Sunderman ("Sunderman"); Arthur Andersen & Company and Al Hagemann (collectively "Andersen"); Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., Robert Thomson and Joseph Harter (collectively "Linde Thomson"), claiming that they were involved in fraudulently selling and/or providing accounting or legal services to the 121 limited partnerships in question.[3] As Sunderman has never filed an answer in this litigation and Linde Thomson has settled with Plaintiffs, Arthur Andersen & Co. and Al Hagemann are the only remaining defendants in this action.

## II. CLASS ACTION CERTIFICATION

In order for a proposed class to be certified, the following prerequisites must be satisfied pursuant to Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, Plaintiffs must satisfy one of the elements of Rule 23(b). Here, Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that the court find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

---

1. In filing the Class Action Complaint, Plaintiffs have dropped several defendants who appeared in some or all of the 93 individual actions.

2. The Class Action Complaint originally named eight class representatives. Two of these Plaintiffs, Dennis and Darlene Pigg, were subsequently withdrawn. *See* Court Order dated June 13, 1988.

3. Plaintiffs have dropped their Texas Securities Act claim against Defendants in Count III of the Class Action Complaint. *See* transcript from the October 28, 1988 oral argument before the Court.

At the outset, the Court notes that a district court has broad discretion in certifying and managing a class action. *Montelongo v. Meese,* 803 F.2d 1341, 1351 (5th Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987). Rule 23 is a remedial rule which should be construed liberally to permit class actions, especially in the context of securities fraud suits, where the class action device can prove effective in deterring illegal activity. *Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 26 (7th Cir.1975); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir.1973); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); 5 *Newburg on Class Actions* § 8800 (1977). The Court's inquiry on a class certification motion is limited to whether the requirements of Rule 23 have been satisfied, and does not extend to whether plaintiff class representatives have successfully stated a cause of action or will prevail on the merits. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), *quoting with approval, Miller v. Mackey International, Inc.,* 452 F.2d 424, 429 (5th Cir.1971). Thus, for purposes of certifying a class, the allegations found in the complaint must be taken as true. *Blackie,* 524 F.2d at 901, n. 17; *Keasler v. Natural Gas Pipeline Company of America,* 84 F.R.D. 364, 365 (E.D.Tex.1979).

### A. *Numerosity*

■ Plaintiffs allege in Paragraph 17 of the Class Action Complaint that there are approximately 4000 investors who purchased limited partnership interests in the Sunderman syndication. Andersen does not appear to challenge the certification of the class for lack of numerosity. The Court finds that the size of the proposed class is sufficiently great to make joinder of all members impractical. The numerosity requirement is therefore satisfied.

### B. *Commonality/Predominance*

The second prerequisite of Rule 23(a) is the existence of questions of law or fact common to the class. If commonality is found, the Court must then determine under Rule 23(b)(3) whether common issues predominate over individual ones.

### (1) Common Scheme

■ Plaintiffs maintain that the commonality and predominance requirements have been met because they have alleged a conspiracy and concerted scheme conducted by the Defendants, which overshadows any individual differences which might exist among class members' claims. Plaintiffs contend that from 1979 through 1984 Sunderman and the various corporate entities which he controlled [4] (collectively "the Sunderman organization") promoted and sold real estate syndications through the dissemination of substantially similar private placement memorandums ("PPMs") to the investing public pursuant to a uniform marketing plan. The partnerships were formed for the purposes of acquiring and operating existing apartment buildings. Plaintiffs claim that all of the Defendants participated in a pervasive course of business to illegally obtain money from the proposed class members. This was accomplished, Plaintiffs allege, through material misrepresentations and omissions within all of the PPMs that were known to or recklessly disregarded by the Defendants including, among other things: (1) inflated purchase prices for the acquired properties; (2) misleading tax information; (3) misleading appreciation projections; (4) misleading property descriptions; (5) failure to disclose the intended misuse of deferred maintenance funds; (6) failure to disclose improp-

---

**4.** The various corporate entities which Sunderman controlled have filed for protection under bankruptcy laws in the United States District Court for the Northern District of Texas, and therefore were not named as defendants in this action. *See* Paragraph 15 of the Class Action Complaint. They include Sunwise Enterprise Corporation which acted as the holding company for Sunward Investments Corporation, Sunstates Management Corporation, Sunbilt Development Corporation, and Sunway Real Estate Corporation.

er commingling of separate limited partnerships' funds; and (7) failure to adequately disclose facts regarding Sunderman's past history with a company under investigation by the SEC. Specific allegations against Andersen, which served as the accountant and auditor for the Sunderman organization, include developing the procedure by which appraisals of the properties were artifically inflated, preparing false financial and tax projections for use in the PPMs, designing a cash management system which enabled Sunderman to commingle funds among limited partnerships, working with the law firm of Linde Thomson to prepare and review tax opinions and discussions contained in the PPMs and participation in overall preparation and review of the format and content of the PPMs. Moreover, Plaintiffs point out, and it is not controverted, that Sunwise, its affiliated companies, and the limited partnerships in question filed for bankruptcy simultaneously on or about March 20, 1985. *See* Paragraph 15 of the Class Action Complaint.

Plaintiffs submit evidence showing the results of an extensive analysis done by their CPA expert, Leonard Levine ("Levine"), demonstrating the high incidence of similarly misleading financial information common throughout all of the PPMs, which also reflects the uniform structure of the deals. *See* Plaintiffs' Exhibit S. In particular, Levine emphasized that all of the PPMs were false and misleading because in each case the values of the acquired properties were overstated, thereby consistently inflating the projected return to investors. *See* Plaintiffs' Exhibit P, Affidavit of Levine. Evidence in the form of billing statements (*see* Plaintiffs' Exhibits JJ and LL) and an internal report (*see* Plaintiffs' Exhibit Y) prepared by Andersen is used by Plaintiffs to show Andersen's extensive involvement in preparing the PPMs and rendering financial and administrative advice to the Sunderman organization, despite concerns over questionable practices on the part of the Sunderman organization. *See id.* Finally, Plaintiffs' real estate expert, John S. Baen ("Baen"), stated that the Sunderman limited partnership securities constituted part of a "single course of business" and that had the actual property values been used in the PPMs, the limited partnership interests could not have been marketed. *See* Plaintiffs' Exhibit K, Affidavit of Baen.

In response, Andersen points to the Advisory Committee Notes to Rule 23 which states that "a fraud case may be unsuited for treatment as a class action if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed." Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966). In essence, Andersen maintains that there can be no common issue which encompasses over 100 separate limited partnership transactions stretching across a five year period. The issues are different, Andersen argues, because the transactions were different, the properties were different, the economy was different at different times and in different places, the tax laws and regulations varied over time, the cities and states where the properties were located were different, and Andersen's involvement or non-involvement was different depending upon the limited partnership at issue. Andersen provides evidence demonstrating that some PPMs did not contain any projection compilation reports, while others contained reports prepared by one of three accounting firms (Arthur Andersen & Co. being only one of them). Similarly, the PPMs contained different sets of financial statements, only some of which were audited. *See* Affidavit of Andersen's CPA Expert, Robert E. Robinson, filed October 7, 1988 and Exhibit G attached thereto. Andersen's real estate expert, Carl M. Moser, concluded that the Sunderman limited partnerships were separate and distinct business activities, since, for example, "an investor ... could not read one Sunderman PPM and, thereafter, invest in a different Sunderman limited partnership in reliance on the information disclosed in the first PPM." *See* Affidavit of Moser, filed October 7, 1988. Thus, Andersen argues, representations in any one PPM differed materially from representations in any other PPM due to the

unique nature of the individual properties acquired by the Sunderman organization. Furthermore, Andersen claims that each potential class member's claim is distinct because some investors relied on varying oral statements from their broker dealers, rather than on the written representations within the PPMs themselves. *See* Andersen's Exhibit 3.

The Court finds that Andersen's argument misses the mark. Plaintiffs do not deny that over 100 PPMs and properties differed one from another, nor that broker/dealers had individual conversations with class members. They maintain instead that Defendants' common course of conduct through a uniform sales plan involved PPMs that were the same or very similar in their misleading or omitted information. In sum, the PPMs are alleged to be *uniformly fraudulent.*

In looking at the commonality requirement, the Fifth Circuit has held that "the key concept in determining the propriety of class action treatment is the existence or nonexistence of material variations in the alleged misrepresentations." *Grainger v. State Security Life Insurance Company,* 547 F.2d 303, 307 (5th Cir.1977). Establishing the similarity of written materials or standardized communications may make the class action device appropriate. *Simon,* 482 F.2d at 883. In the same vein, other Courts faced with similar fact situations as the case at bar have held that where the complaint alleges a scheme or common course of misconduct against a large class of purchasers allegedly defrauded over a period of time by similar misrepresentations, class certification is appropriate, regardless of the existence of some differences in class members' positions. *See Blackie,* 524 F.2d at 902 and cases cited therein. The class action device is appropriate in securities fraud cases involving similar or identical misrepresentations, even if they are issued at different times. *Green, supra,* 406 F.2d 291. Furthermore, where, as here, financial advisors are relying upon a common set of documents disseminated by the defendants, their oral representations to investors do not necessarily translate into unique communications to class members. *Mulcahey v. Petrofunds,* 79 F.R.D. 272, 280 (S.D.Tex. 1978).

The Court thus concludes, based on the pleadings and evidence before it, that Plaintiffs have sufficiently alleged a conspiracy and common course of conduct of substantially similar misrepresentations and omissions affecting the entire putative class to meet the commonality requirement of Rule 23(a)(2). In so doing, the Court relies on Plaintiff's evidence demonstrating the uniformity of allegedly misleading financial information and descriptions of properties across all PPMs, the strikingly similar means in which the PPMs were prepared and their almost identical format, and the fact that Sunwise, its subsidiaries and all of the limited partnerships simultaneously filed for bankruptcy.

## (2) Reliance

■ Andersen's primary challenge to class certification centers upon its assertion that questions of individual reliance on the alleged misrepresentations and omissions in the PPMs by class members clearly predominate.

Plaintiffs claim that reliance can be proved in one of three alternative ways, any one of which does not create an obstacle to class certification. First, Plaintiffs contend, based on their reading of *Mulcahey, supra,* 79 F.R.D. 272, that reliance can be proved on a class-wide basis. In *Mulcahey,* defendants sold participation interests in oil and gas drilling funds to more than 1,000 class members over a period of four years. The district judge found that the sale was made pursuant to a standardized sales plan and therefore common issues of reliance made class certification appropriate.

Plaintiffs alternatively argue that because they have alleged a common scheme to defraud the public, putative class members are entitled to a presumption of reliance based on a "fraud on the market"

theory under Rule 10b–5 (1) and (3).[5] Relying on *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), Plaintiffs maintain that but for Defendants' fraudulent course of conduct, the securities in this case could not have been marketed.

In *Shores*, the plaintiff alleged a fraudulent scheme by defendants designed to induce a municipality to issue, and the public to buy, unmarketable bonds. The Fifth Circuit applied the "fraud on the market" theory under Rules 10b–5(1) and (3)[6] to the *issuance* of securities on an *undeveloped* market. Up until that time, this theory had been applied only to *pricing* of publically traded securities on an efficient *secondary* market. *See In re LTV Securities Litigation*, 88 F.R.D. 134 (N.D.Tex.1980). In both instances, reliance on the integrity of the market substitutes for individual proof of reliance on misleading information in a prospectus. Under *Shores*, a fraud on the market case requires proof: (1) that defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers; (2) that plaintiff reasonably relied on the securities' availability on the market as an indication of their apparent genuineness; and (3) that plaintiff suffered a loss as a result of the scheme to defraud. *Shores*, 647 at 469–70.

Finally, Plaintiffs argue that even if individual issues of reliance may exist, they do not predominate over the issues of Defendants' liability, and their resolution can be deferred until after the Court disposes of the questions common to the class.

Andersen responds that the Class Action Complaint alleges only a Rule 10b–5(2)

cause of action based upon misrepresentations and omissions requiring proof of individual reliance by each class member. Andersen maintains that to the extent that *Mulcahey* holds reliance is a common issue, it is contrary to and is rendered obsolete by *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir.1981), *rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), which states: "[I]n a class action, while the materiality element can be established for the class as a whole, reliance, like damages, is a matter of individual proof." *Id.* at 549. Andersen asserts, relying on *Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 66 (N.D.Tex.1984), that as long as reliance remains an issue, it clearly predominates over any possible issues which the Court might find to be common to the class. Furthermore, Andersen argues that Plaintiffs have failed to properly plead a fraud on the market theory in the Class Action Complaint and that even if allowed to amend, Plaintiffs would be unable to assert such a theory since there was no "market" in this case. Andersen contends that the Sunderman offerings dealt with unregistered securities which were not publically traded and which, unlike the factual situation in *Shores*, did not pass through any regulatory review.

■ Contrary to Andersen's contention, the Court finds that Plaintiffs have not limited themselves exclusively to a misrepresentation and omission claim under Rule 10b–5(2). The Court is of the opinion that rendering a decision on whether *Huddleston* overrules *Mulcahey* or whether Plaintiffs will ultimately be able to rely successfully on a fraud on the market theory requires it to prematurely consider the

---

**5.** Rule 10b–5 provides in part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, ...
(1) to employ any device, scheme, or artifice to defraud,
(2) to make any untrue statement of a material fact or to omit to state a material fact or to omit to state a material fact necessary in order to make the statements made, in light of

the circumstances under which they were made, not misleading, or
(3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5, promulgated under 15 U.S.C. § 78j(b).

**6.** The Court found that proof of individual reliance is an essential element of a claim asserted under 10b–5(2). *Shores*, 647 F.2d at 468.

merits of the underlying action. *See Lamb v. United Security Life Company*, 59 F.R. D. 25, 35 (S.D.Iowa 1972). At this juncture, the Court will allow the Plaintiffs to proceed under their three alternative theories of reliance, noting that should class members' personal reliance on Defendants' allegedly misleading materials ultimately have to be decided on an individual basis (Plaintiffs' third alternative theory), the Court does not now foresee insurmountable obstacles to the continued maintenance of the class action. The presence of individual questions of reliance does not mean that such questions automatically predominate. In rejecting this argument, the Second Circuit stated: "Carried to its logical end [this argument] would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action." *Green*, 406 F.2d at 301. Rather than rule out a class action in any case where reliance may be a matter of individual proof, it is more efficient to order separate trials, if necessary, to resolve the reliance issue. Such a procedure has been followed by many courts (*see Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Green*, 406 F.2d at 301; *Ridings v. Canadian Imperial Bank of Commerce Trust Company, Ltd.*, 94 F.R.D. 147, 151 (N.D.Ill.1982); *Jensen v. Continental Financial Corporation*, 404 F.Supp. 806, 813–14 (D.Minn.1975); *Lamb*, 59 F.R.D. at 33) and, in the Court's opinion is particularly appropriate in situations where, as here, a fraudulent scheme or common course of conduct has been alleged. While the reliance issue may prove to be the most troubling to the continued maintenance of the class, "the interests of justice require that in a doubtful case, ..., any error, if there is to be one, should be committed in favor of allowing the class action." *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Horton v. Goose Creek Independent School District*, 690 F.2d 470, 487 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

(3) Causation

■ Andersen also challenges Plaintiffs' claim that common issues predominate, arguing that each class member will have to prove that his reliance on the alleged misleading material in the PPMs was the proximate cause of his injury. The causation element in *Huddleston*, 640 F.2d at 549, requires that a plaintiff show that a defendant's misrepresentation is in some reasonably direct or proximate way responsible for his loss. *Id.* Andersen suggests alternative reasons why an individual investor's partnership may have failed, such as poor management of apartment projects, improper placement of the partnerships into bankruptcy, improper finding of loans by lenders, and poor economic times.

The Court finds that while these hypotheses may be possible, they do not negate the fact that Plaintiffs need only demonstrate under Rule 23 that common issues of law or fact exist which predominate over individual issues, a burden which Plaintiffs have decidedly met. *See In re Unioil Securities Litigation*, 107 F.R.D. 615, 619–20 (C.D.Cal.1985). Andersen cannot escape certification of the plaintiff class merely because there *may* have been another cause for a plaintiff's injury apart from Defendants' allegedly illegal conduct. The Court is not convinced that the possibility that causation may be an individual issue tips the balance of predominance in Andersen's favor.

(4) RICO and Pendent Common Law Claim

■ Andersen next contends that since investors in the Sunderman limited partnerships are geographically dispersed over the United States no single law would govern the entire class and therefore would not predominate, since the elements necessary to prove a case of fraud vary from state to state. However, the Court finds that an assertion that *potential* differences in the elements of common law fraud exist among the small number of states involved in this litigation will not defeat certification. Rule 23(a)(2) does not require that all questions of law be identical across class members'

claims, and Andersen has failed to show that there will be any substantive variations in law among the states. *See In re Orfa Securities Litigation,* 654 F.Supp. 1449, 1462–63 (D.N.J.1987); *Dekro v. Stern Brothers & Co.,* 540 F.Supp. 406, 418 (W.D. Mo.1982); *see also In re Pizza Time Theatre Securities Litigation,* 112 F.R.D. 15, 18 (N.D.Cal.1986) (court should not conclusively determine choice of law question on motion for class certification).

■ Further, Andersen claims that the necessity to prove individual reliance and causation in the common law fraud and RICO claims causes individual issues to predominate over any common issues. The Court is of the opinion that since Plaintiffs' RICO and common law fraud claims are predicated upon the same fraudulent acts and material representations and omissions that underlie the federal securities claims in this action, the similarities among them outnumber the differences. *See Dekro,* 540 F.Supp. at 418. Class action treatment will also prove to be more efficient as it seems likely that the evidence regarding certain elements of these claims will overlap to a great extent. Consequently, the Court finds that the required predominance of common issues is present in connection with both Plaintiffs' federal and common law claims.

In sum, Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions predominate over individual questions. "To be sure, individual issues will likely arise in this as in all class action cases. But, to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981). The Court finds that Plaintiffs have met this requirement in the present case by sufficiently pleading an alleged conspiracy and common course of conduct by the Defendants to defraud investors. In addition to these common factual issues, the Court also finds that common legal issues relating to the applicability of the 1934 Securities Act, RICO claim and common law fraud cause of action predominate.

### C. *Typicality*

■ Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.

"A plaintiff's claim meets the typicality requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory ... Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought. The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."

*Dura–Bilt,* 89 F.R.D. at 99.

Andersen contends that because the six named class representatives invested in only seven out of 121 limited partnerships, their claims are not typical. Specifically, Andersen argues that these Plaintiffs each invested in a different limited partnership which contained separate and distinct representations and disclosures depending upon the particular property. It contends that Andersen's involvement varied across the class representatives' PPMs pointing, for example, to the fact that Allan C. and Joy T. McAllister's PPMs contained no compilation reports or financial statements prepared by Andersen. Furthermore, Andersen presented deposition testimony of the class representatives to demonstrate that they relied on broker/dealers and/or their spouses rather than the written PPMs in making their decisions to purchase limited partnership interests. Due to these individual differences, Andersen contends that Plaintiffs' claims are atypical.

The Court finds Andersen's position with respect to the typicality requirement largely repetitive of its arguments regarding

commonality. The individual factual differences among the class representatives will not defeat class certification in this case where Plaintiffs have alleged a continuous course of conduct by defendants which is uniformly fraudulent and that they, as well as each member of the class, suffered a financial loss as a result of the alleged Sunderman scheme. *See Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 505 (S.D.N.Y.1984). Andersen is tied to the alleged conspiracy and concerted scheme even though its name may not have appeared in a particular PPM. *See La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973) (where the court held that the typicality requirement is met even where the named plaintiffs did not deal directly with all defendants, provided a concerted scheme or conspiracy is alleged). The Court also notes that there is nothing unusual in the fact that some investors may have consulted or placed confidence in their broker/dealers or relied on their spouse's advice in deciding to invest in the Sunderman limited partnership interests. If anything, not to do so would seem atypical. *See Bresson v. Thomson McKinnon Securities Inc.,* 118 F.R.D. 339, 344 (S.D.N.Y.1988); *Mulcahey,* 79 F.R.D. at 280.

■ Andersen also argues that Dr. Bharat H. Barai is a "sophisticated investor," and as such, he is incapable of representing less sophisticated members of the proposed class because he may be subject to the defense that he failed to act with "due diligence," making his claims atypical from other class members. The Court is unable to conclude from the excerpts of Dr. Barai's deposition testimony presented by Andersen (*see* Andersen's Exhibit 2, Bharat Barai's Deposition pp. 54–55, 42–51, 68–70) that Dr. Barai's background in investment affords him such sophistication above and beyond that of the putative class members that he is atypical of the class. Dr. Barai is certainly not as experienced as the class representative who was a bank vice-president and licensed securities broker in *Warren v. Reserve Fund, Inc.,* 728 F.2d 741 (5th Cir.1984), the case upon which Andersen bases its "sophisticated investor" argument. *See Greenwald v. Integrated Energy, Inc.,* 102 F.R.D. 65, 70 (S.D.Tex.1984) (economics degree and ownership of securities in several companies does not render class representative a "sophisticated investor").

Based on the foregoing, the Court finds that the class representatives' claims are typical of those belonging to the remainder of the class.

### D. *Adequacy of Representation*

■ In order to satisfy the requirements of Rule 23(a)(4) that the representative parties fairly and adequately protect the interests of the class, the interests of the class representative must not be antagonistic to those of the remaining class members, and the representative parties, through their attorneys, must be prepared to prosecute the action vigorously. *Gibb,* 104 F.R.D. at 75; *Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 84 (N.D.Tex.1979).

The Court in its discussion of Rule 23(a)(3) has already determined that the interests of the class representatives and other class members coincide (*see* discussion, *supra,* on "Typicality"), and thus finds that there is no antagonism among the class members claims. Andersen contends, however, that the representative parties have not exhibited the degree of knowledge and understanding of the substance of this case and commitment that is expected of a class representative. In particular, Andersen points to Bharat H. and Panna B. Barai's (the "Barais") failure to comply with certain discovery requests in their individual actions presently pending in this Court as an indication that these class plaintiffs will be inadequate class representatives.

The Court finds, after reviewing the excerpts of class representatives' deposition testimony submitted by Andersen, that the six named Plaintiffs in this case have sufficient knowledge of their claims, their duties as class representatives, and the nature of the class they seek to represent to meet the adequacy requirement of Rule 23(a)(4). While several Plaintiffs were unfamiliar with what the exact misrepresenta-

tions or omissions were in their own or other class mambers' PPMs, the Court finds that in light of the conspiracy and concerted scheme allegations and the complex nature of securities law, it is unreasonable to expect the class representatives to possess detailed, personal knowledge of the facts surrounding the potential fraud. *See Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 175 (E.D.Pa.1979); *see also Lewis v. Curtis*, 671 F.2d 779 (3d Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Weinberger v. Jackson*, 102 F.R.D. 839, 845 (N.D.Cal.1984). Moreover, "few persons other than attorneys involved in class litigation could accurately articulate the full extent of the fiduciary responsibilities and other efforts required of a class plaintiff." *Ridings*, 94 F.R.D. at 155. While Andersen is correct in pointing out that failure to comply with class discovery requests is a basis to find a class representative inadequate (*see Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983)), the Court finds that the Barais appear to be complying with all class discovery at the present time, and therefore is unwilling to hold that the adequacy requirement has not been satisfied.

■ In analyzing the "vigorous prosecution" element of the adequacy requirement, the Court concludes that the qualifications and experience of class counsel is of greater consequence than the knowledge of class representatives. *See In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 751, n. 27 (E.D.N.Y.1986). Andersen challenges counsel's adequacy in effectively representing all class members in this case because (1) several defendants who were sued in the individual actions have been dropped in the Class Action Complaint without reason; (2) the broker/dealers were never sued in any action because one of the class counsel's attorneys, Deborah Massey, had previous affiliations with the broker/dealer community which sold the Sunderman offerings; and (3) counsel failed to fully disclose all agreements between National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and some members of the class and failed to seek court approval of such agreements pursuant to Rule 23(e).

The Court finds these arguments unpersuasive. The fact that class counsel, Much Shelist Freed Denenberg Ament & Eiger, P.C. and Susman Godfrey & McGowan, decided to drop certain defendants from the individual suits or not to sue other potential parties is a decision within counsel's discretion and is not a basis for a finding of inadequacy. *See Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D.Cal.1978). Moreover, Plaintiffs maintain, and Andersen does not contest, that Ms. Massie fully disclosed to her clients that she was not pursuing claims against the sales community due to her firm's close working relationship with several broker/dealers. Additionally, since National Union has not been named in the Class Action Complaint, the Court concludes that the settlement agreement between National Union and several individuals who may be class members is not governed by Rule 23(e) and does not therefore reflect poorly on class counsel. Class counsel's performance to date leaves the Court with no doubt that Plaintiffs' claims will be vigorously and satisfactorily prosecuted throughout the course of this litigation. The adequacy requirement is therefore satisfied.

### E.  *Superiority*

■ As a final matter, the Court must decide pursuant to Rule 23(b), (c) whether a class action in this instance is superior to other possible methods of fairly and efficiently resolving this controversy. As previously stated, the Court is presently faced with the burden of litigating 93 individual lawsuits which appear to arise out of the same set of operative facts. A resolution of common issues in one proceeding will both produce an efficient use of judicial resources and result in a single outcome binding on all class plaintiffs. The Court finds that any administrative difficulties in handling potential individual issues under a class action are less burdensome than the problems which are likely to arise in handling the claims in nearly 100 separate

actions. In sum, the class action device is the superior method in this case for achieving an efficient and fair adjudication of the matters in controversy.

## III. CONCLUSION

The Court finds that Plaintiffs have adequately demonstrated that the potential class members are too numerous for individual joinder to be practicable, that there are questions of law or fact common to all members of the class, that these common issues will predominate over any individual issues of reliance, causation or damages, and that they will be fairly and adequately represent the interests of the absent class members in establishing Andersen's liability.

In view of the foregoing, the Court concludes that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Accordingly, IT IS HEREBY ORDERED:

1. That Plaintiffs' Motion to certify this litigation as a class action is GRANTED;

2. That counsel for the Plaintiffs prepare a form of notice pursuant to Rule 23(a)(2) and, after conferring with counsel for Andersen, submit a proposed order specifying the method of giving notice to the class by *noon, November 28, 1988.*

3. That counsel will confer and submit to the Court by *noon, December 12, 1988* a proposed Scheduling Order for the disposition of this litigation.

SO ORDERED.